# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINA M. WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-822-BMJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Gina M. Wright, seeks judicial review of the Social Security Administration's (SSA) denial of her application for supplemental security income (SSI). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 12], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.**     **Procedural Background**

On September 16, 2011, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff not disabled and, therefore, not entitled to SSI. AR 13-21. After denial by the Appeals Council, on August 26, 2014, this court reversed and remanded the case. AR 769-86. The Appeals Council then vacated the ALJ's decision and remanded with specific instructions for further proceedings, including the instruction to consolidate the remanded claim with a claim filed on April 1, 2014, and to create a single record and issue a new decision on the consolidated

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

claims. AR 791. Subsequently, on February 26, 2016, the ALJ issued a second unfavorable decision finding Plaintiff not disabled. AR 696-711. The Appeals Council denied Plaintiff's request for review. AR 680-85. Accordingly, the ALJ's second decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

## II.     The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 416.920. Following this process, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 14, 2009, her application date. AR 698.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: degenerative disc disease, degenerative joint disease/arthritis, carpal tunnel syndrome, hypertension, dysthymic disorder, depression, PTSD, anxiety with panic attacks, and histrionic personality disorder. AR 699. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 699-701.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that:

> [T]he claimant has the [RFC] to lift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for about six hours during an eight-hour workday and can stand and walk for at least two hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger. The claimant is to avoid all exposure to hazards, such as unprotected heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can respond appropriately to usual work situations. The claimant can have no contact with the general public.

AR 701-10.

2

At step four, relying on a vocational expert's (VE) testimony, the ALJ determined Plaintiff is unable to perform any of her past relevant work. AR 710. Proceeding to the fifth step and relying on the VE's testimony, the ALJ found Plaintiff can perform other work existing in significant numbers in the national economy. AR 710-11. Specifically, the ALJ found Plaintiff can perform the requirements of representative jobs such as addressor, tube operator, and document preparer. AR 711. Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. AR 711.

## III.      Claims Presented for Judicial Review

Plaintiff alleges the ALJ erred in: (1) failing to properly evaluate medical evidence and (2) failing to properly evaluate Plaintiff's credibility. Pl.'s Br. [Doc. No. 17] at 3-8, 8-15. As explained below, the Court finds no grounds for reversal.

## IV.      Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

## V. Analysis

### A. Evaluation of medical evidence

Plaintiff asserts that the ALJ did not properly evaluate medical evidence from A.N. Bhandary, M.D.; J.A. Saidi, M.D.; and State agency reviewers.

#### 1. Dr. Bhandary

Plaintiff argues that the ALJ erred in failing to evaluate a letter written by Dr. Bhandary according to the rules for evaluation of a treating physician's opinion. Pl.'s Br. at 3-4; *see also Krauser*, 638 F.3d at 1330-32 (explaining process for evaluating opinion of a treating physician). As an initial matter, the record does not support the conclusion that Dr. Bhandary's letter was, in fact, a treating physician opinion. Though Plaintiff testified at the administrative hearing that she had seen Dr. Bhandary for "approximately maybe six months or something" prior to the closing of his practice, the administrative record does not include any treatment records from him. *See* AR 735, 736. And more importantly, when Plaintiff's case was previously litigated before this Court, it was determined that Dr. Bhandary was not a treating physician but was, instead, a "nontreating source." AR 775-76 (discussing the lack of medical records from Dr. Bhandary, noting that "Plaintiff acknowledges that Dr. Bhandary is not a treating source within the meaning of SSA regulations," finding that the "evidence indicates that Dr. Bhandary saw Plaintiff only one time before issuing his opinion," and concluding that Dr. Bhandary was not a treating physician). Thus, under the law of the case, Plaintiff's argument that the ALJ erred in failing to evaluate Dr. Bhandary's letter as a treating physician opinion fails.[2]

---

[2] Under the law of the case doctrine, "an administrative agency, on remand from a court, must conform its further proceedings in the case to the principles set forth in the judicial decision." *Poppa*, 569 F.3d at 1170 (internal quotation marks, alteration, and citation omitted). The law of the case doctrine "applies to issues previously decided, either explicitly or by necessary implication." *Id.* (internal quotation marks and citation omitted).

4

Moreover, even as a nontreating source, under the law of the case doctrine, Dr. Bhandary's letter is not entitled to any weight. *See* AR 776-77 (finding that Dr. Bhandary's opinion "is entirely general and conclusory"; "lacks any discussion or reference to medical testing or observations"; includes a statement of disability, which is an issue reserved for the ALJ; and is "not entitled to any weight"). As such, even if the Court were to find that the ALJ did not adequately explain his rejection of Dr. Bhandary's letter, such error would not result in harm to the Plaintiff. *Cf. Harris v. Astrue*, 496 F. App'x 816, 819 n.1 (10th Cir. 2012) ("The burden to show prejudicial error on appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Accordingly, the court finds no reversible error in the ALJ's evaluation of Dr. Bhandary's letter.

**2. Dr. Saidi**

Plaintiff next argues that reversal is required because the ALJ did not properly evaluate the opinion of treating physician Dr. Saidi. Pl.'s Br. at 4-5. Under Tenth Circuit authority, and the SSA's regulations, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 416.927(c)(2). The opinion of a treating physician must be given controlling weight if it is both well supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 416.927(c)(2).

Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *Watkins*, 350 F.3d at 1300-01; *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). A treating physician opinion not afforded controlling weight is still entitled to deference.

5

*Watkins*, 350 F.3d at 1300. This determination should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotation marks omitted); 20 C.F.R. § 416.927(c)(2)-(6).

The ALJ is also obligated to clearly state what weight is being given to a treating physician's opinion and the ALJ's reasons for the determination. *Watkins*, 350 F.3d at 1301. The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5). If an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Id.* at 1301 (internal quotation marks omitted).

Medical evidence indicates that Plaintiff first saw Dr. Saidi in February of 2013, and on March 25, 2014, Dr. Saidi completed a "Treating Physician Mental Functional Assessment Questionnaire." AR 1128; AR 1125-1154, 1216-25. In that questionnaire, Dr. Saidi "describe[d] current functional limitations related to [Plaintiff's] mental condition" as "when she get[s] anxiety & panic attack[s,] she cannot continue her chores & work for that moment." AR 1128. The ALJ gave this statement "some weight." AR 708.

Though the ALJ did not separately articulate his findings with respect to the first inquiry in the two-step procedure—whether Dr. Saidi's opinion should be given controlling weight—such findings are implicit in the discounted weight assigned to the opinion. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding "any imaginable oversight" to be "clearly

harmless" when ALJ did not expressly say he was not affording treating physicians' opinions controlling weight but explained that they were entitled to no weight because they were inconsistent with the medical records and there was substantial evidence to support that decision).

And continuing to the second inquiry, the reasons for the ALJ's decision to discount Dr. Saidi's opinion are clear. Specifically, the ALJ stated that he found that Plaintiff's "conditions remain adequately controlled for her to work above the SGA level." AR 708. The ALJ also pointed to the short duration of the treatment relationship between Plaintiff and Dr. Saidi, noting that Plaintiff had only been seeing Dr. Saidi for just over a year prior to his statement. AR 708, 1125-1154, 1216-25; *see also* 20 C.F.R. § 416.927(c)(2)(i) (ALJ will consider the length of the treatment relationship). The ALJ further noted that Plaintiff "routinely presented for refills and stated her meds 'help her.'" AR 708, 1125-1154, 1216-25; *see also Watkins*, 350 F.3d at 1301 (ALJ will consider the nature and extent of the treatment relationship, including the treatment provided).

Thus, the ALJ adequately supported his determination to give discounted weight to Dr. Saidi's opinion. The Court "must affirm an ALJ's decision if substantial evidence—'more than a scintilla, but less than a preponderance'—exists to support it." *Tarpley*, 601 F. App'x at 643 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Because the ALJ's decision to give discounted weight to Plaintiff's treating physician is supported by substantial evidence, reversal is not warranted on this claim of error.[3]

---

[3] Supporting her argument regarding Dr. Saidi's opinion, Plaintiff asserts that the ALJ "ignores that the Appeals Council directed him to consolidate the records, address the new evidence and issue a new decision . . . . The ALJ must consider all the evidence, even evidence presented in prior claims." Pl.'s Br. at 5. Recognizing the direction from the Appeals Council, however, the ALJ "consolidated the claim files, created a single record, and [issued] a new decision on the consolidated claims." AR 696. And if Plaintiff is arguing that there is evidence in the record relevant to the ALJ's evaluation of Dr. Saidi's claim that the ALJ should have reviewed but did

Moreover, Dr. Saidi's statement was that "when [Plaintiff] get[s] anxiety & panic attack[s,] she cannot continue her chores & work for that moment." AR 1128. In assessing Plaintiff's RFC, the ALJ included several anxiety-related mental limitations, including a restriction to understanding, remembering, and carrying out simple, routine, and repetitive tasks; a limitation to relating to supervisors and co-workers on a superficial work basis; and a requirement that Plaintiff have no contact with the general public. AR 701. Plaintiff does not propose any additional limitations that would correspond to a limitation in continuing chores and work in the moment that Plaintiff has a panic attack. Thus, even if ALJ had erred in evaluating Dr. Saidi's opinion, Plaintiff has not shown that giving greater weight to the opinion would have resulted in a materially different RFC and therefore "cannot demonstrate any prejudice" from the ALJ's alleged error. *See Covington v. Colvin*, 678 F. App'x 660, 666-67 (10th Cir. 2017) (noting that giving certain physicians' opinions greater weight "would not have helped" the plaintiff where the ALJ had "included similar limitations" in the RFC); *Keyes-Zachary*, 695 F.3d at 1162-63 (explaining that an alleged error in the ALJ's decision did not prejudice the plaintiff because giving greater weight to a particular part of the record would not have helped her).

### 3. State agency psychologists

Plaintiff alleges that the ALJ "overlooked" the State agency psychologists' findings that Plaintiff is moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them. Pl.'s Br. at 6-8 (citing AR 802, 815). Plaintiff cites to assessments by the State agency psychologists who, on initial consideration and reconsideration,

---

not, it is her responsibility to direct the Court to such evidence. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) ("[I]t isn't [the Court's] obligation to search the record and construct a party's arguments.").

found that Plaintiff is moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Pl.'s Br. at 6 (citing AR 802, 815). These limitations were noted in the first section of the Mental RFC Assessment form (MRFCA). *See* AR 801-03, 814-15.

As explained by the Tenth Circuit, the Section I of the MRFCA is for "recording summary conclusions derived from the evidence in the file" and directs that "detailed explanation of the degree of limitation for each category is to be recorded in Section III."[4] *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (quoting alternate version of the MRFCA form) (internal quotation marks and alterations omitted). More specifically, while "[t]he purpose of Section I is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation, *[i]t is the narrative written by the . . . psychologist in Section III that adjudicators are to use as the assessment of RFC.*" *Id.* at 619 (emphasis in original; alterations, internal quotation marks, and citation omitted). In the section for Additional Explanation (the equivalent of Section III), both State agency psychologists explained that Plaintiff is able to perform simple tasks with routine supervision,[5] is able to relate to supervisors and co-workers on a superficial and limited work basis, is not able to relate to the general public, and is able to adapt to changes in the workplace setting. AR 803, 815.

---

[4] The form of the MRFCA referenced by the Tenth Circuit in *Carver* included sections captioned Section I (the first section) and Section III (the last section). The form of the MRFCA in Plaintiff's record is slightly different and the first and last sections are not captioned as Sections I and III; however, the substance of the form is the same and the principles explained by the Tenth Circuit still apply.

[5] Though not at issue in this case, the initial State agency psychologist found that Plaintiff is also able to perform some complex tasks with routine supervision. AR 803. The ALJ rejected this finding. AR 707.

Plaintiff does not argue that the RFC does not include limitations for each of the Section III conclusions. *See* Pl.'s Br. at 6-8. Rather, Plaintiff argues that the Section III conclusions do not account for the limitations set forth in Section I regarding Plaintiff's abilities to work in coordination with or in proximity to others without being distracted by them or to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Pl.'s Br. at 6-8. The Tenth Circuit has cautioned that an ALJ's reliance on Section III "does not mean that an ALJ can turn a blind eye to moderate Section I limitations . . . ." *Carver*, 600 F. App'x at 619. "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* Here, however, Plaintiff does not demonstrate any such contradiction. *See* Pl.'s Br. at 6-8. Plaintiff discusses her "dramatic fashion," hygiene, and social isolation, but none of these issues undermine the Section III narrative or indicates that the Section III narrative does not "adequately encapsulate[]" and "describe the effect of" the moderate limitation Plaintiff cites. *See Carver*, 600 F. App'x at 619.

Though the ALJ did not repeat the moderate limitations noted by the State agency psychologists in Section I, he incorporated those limitations by stating how Plaintiff was limited in her ability to perform work-related activities. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (finding such approach "acceptable in our circuit"). The Court finds no error in the ALJ's consideration of the MRFCAs or in his reliance on the opinions of the State agency psychologists. *See id.* at 1269 and n.2 (10th Cir. 2016) (when Plaintiff challenged that RFC did not account for Section I notations of moderate limitations in ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, explaining that comparison

was between RFC and Section III opinion on functional limitations, and affirming ALJ's conclusions that plaintiff (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks); *Lee v. Colvin*, 631 F. App'x 538, 540-42 (10th Cir. 2015) (affirming when psychologist assessed moderate limitations plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and ALJ did not expressly incorporate those limitations in the RFC, but did find plaintiff was limited to simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers); *Fulton v. Colvin*, 631 F. App'x 498, 502 and n.4 (10th Cir. 2015) (finding the Section III opinion that plaintiff "has the ability 'to interact with coworkers and supervisors for incidental work purposes,' as adequately describing the effect of the [Section I] moderate limitation in his 'ability to work in coordination with or proximity to others without being distracted by them'" (internal citations omitted)); *Beasley v. Colvin*, 520 F. App'x 748, 755 (10th Cir. 2013) (affirming that substantial evidence supported ALJ's determination that plaintiff could respond appropriately to supervision, co-workers, the general public, and usual work situations when medical opinion indicated limitations in working in coordination with or proximity to others without being unduly distracted).

### B. Evaluation of allegations of subjective symptoms

The assessment of a claimant's RFC generally requires the ALJ to determine whether a claimant's statements describing "the intensity, persistence, and functionally limiting effects of . . . symptoms" such as pain and other subjective complaints are consistent with the record evidence. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017, applied to decisions made on or after March 28, 2016), at *2; *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). "Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such

determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted).[6]

The SSA has provided comprehensive guidance on how an ALJ considers claimants' statements regarding their symptoms when deciding whether he believes their assertions of severity:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4; *see also Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). In addition to using all of the evidence, the ALJ should consider the following factors:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. § 416.929(c)(3).

---

[6] In 2016, the SSA "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Nevertheless, this evaluation remains "the province of the finder of fact." *See Arterberry v. Berryhill*, 743 F. App'x 227, 231-32 and n.3 (10th Cir. 2018).

Plaintiff alleges that the ALJ improperly considered her subjective complaints of symptoms. Pl.'s Br. at 8-15. The Court disagrees and finds that the ALJ followed the proper procedure and made determinations that were supported by substantial evidence. In evaluating Plaintiff's allegations of disabling symptoms, at step one, the ALJ found that Plaintiff has medically determinable impairments that could reasonably be expected to cause some of the pain, discomfort, and psychological limitations alleged. AR 706. The ALJ then evaluated the record to determine the extent of limitations caused by Plaintiff's symptoms and found that Plaintiff's symptoms were not "at the disabling level of severity, duration, and intensity" that Plaintiff alleged. *Id*.

### 1. Objective medical evidence

In considering the intensity, persistence, and limiting effect of Plaintiff's symptoms, the ALJ reviewed the objective medical evidence and whether Plaintiff's statements regarding her symptoms were consistent with such evidence. *See* AR 702-06; SSR 16-3p, 2017 WL 5180304, at *5 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").

Specifically, the ALJ considered objective medical evidence regarding Plaintiff's hypertension and noted that it was adequately controlled with medication and causes no cardiovascular or respiratory problems. AR 702, 706. The ALJ also considered the objective medical evidence regarding Plaintiff's chronic lower back pain, and noted that:

> a[n] MRI and other diagnostic imaging shows only mild to moderate bulges and changes in the lumbar spine; the claimant has 5/5 strength in the lower extremities; she has no edema in the lower extremities; she has a normal gait; there is no indication of loss of grip; . . . Ernestine Shires, M.D., state agency physician concluded the claimant could perform light exertional work activity with limitations of climbing, stooping, and crouching; [and] Dr. Remondino released the claimant with a 25-pound weight limit.

AR 703-06. The ALJ additionally discussed in detail the various imaging results as well as the results of different physical examinations including indications of both pain and no pain. *Id*.[7]

With respect to Plaintiff's hand and wrist pain, the ALJ reviewed the objective medical evidence from Jeri Ellis, M.D., whom Plaintiff testified had recommended surgery. The ALJ found that review of Dr. Ellis' records "does not reflect that recommendation or any discussion of hand problems." AR 702; *see also* AR 738 (Plaintiff testifying that Dr. Ellis recommended hand surgery).[8] The ALJ also discussed that Vincent Devlin, M.D., conducted a positive carpal tunnel test but did not diagnose Plaintiff with carpal tunnel, while Dr. Saidi did diagnose Plaintiff with carpal tunnel, but "reported no findings related to the diagnosis" and "medical evidence of record reveals no specific treatment for the condition." AR 703; *see also* AR 705 (discussing Dr. Saidi's assessment of carpal tunnel and noting that Plaintiff acknowledged that medication relieved her pain).

---

[7] Plaintiff asserts that the ALJ "overlook[ed]" the progressive deterioration shown in the MRI studies, but the ALJ acknowledged "mild to moderate . . . changes." *Compare* Pl.'s Br. at 10-11, *with* AR 703-06. Plaintiff also asserts that the ALJ "ignored" some of Dr. Saidi's diagnoses and physical examination results, claiming that the ALJ was "improperly picking and choosing" among medical records. Pl.'s Br. at 12. But the ALJ specifically noted the diagnoses Plaintiff claims were ignored, as well as both positive and negative physical examination reports from Dr. Saidi and other physicians. *See* AR 703-06. Plaintiff's arguments are unfounded.

[8] Plaintiff argues that "[a] review of the record confirms there is no recommendation for carpal tunnel surgery by Dr. Ellis, but that does not mean he did not recommend surgery." Pl.'s Br. at 8. To support this argument, Plaintiff cites to *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) for the proposition that "[t]he absence of evidence is not evidence." *Id.* But in *Thompson*, the claim of error at issue was at step five, where the burden of proof was on the Commissioner and, thus, the Commissioner could not rely on the absence of evidence. *See Thompson*, 987 F.2d at 1491; *Castine v. Astrue*, 334 F. App'x 175, 179 (10th Cir. 2009). In contrast, here the burden in on Plaintiff to present evidence of disability and evidence is required. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability."); *Allen v. Apfel*, 216 F.3d 1086, 2000 WL 796081, at *3 (10th Cir. June 21, 2000) (medical evidence of record must support plaintiff's claims of disabling pain).

Finally, with respect to Plaintiff's stress, depression, and anxiety, the ALJ discussed her "history" and found that "medical evidence of record shows longstanding mental health issues." AR 703; *see also* AR 703-06. The ALJ also noted that the medical evidence of record showed improvement with treatment. AR 705. Though Plaintiff cites to evidence supporting her complaints of poor ability to focus and concentrate, she does not cite to any objective medical evidence that supports her claims of functional limitations more extensive than the ALJ determined in the RFC. *See* Pl.'s Br. at 8-9.

And though Plaintiff argues that the objective medical evidence does not have to demonstrate the severity of Plaintiff's conditions, Pl.'s Br. at 11, it must be consistent. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) ("The medical records must be consistent with the nonmedical testimony as to the severity of the pain."). Here, the ALJ found that "a careful review of the record fails to document sufficient valid, objective medical evidence to substantiate the degree of functional limitations alleged." AR 706. The Court finds that substantial evidence supports the ALJ's determination that the objective medical records were not consistent with Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.

### 2. Plaintiff's statements

The ALJ also considered statements the Plaintiff made regarding her symptoms. *See* AR 702-06; SSR 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."), *8. In finding that Plaintiff's statements were not entirely reliable, the ALJ pointed to numerous inconsistent statements. AR 702-07. Initially, the ALJ noted Plaintiff's allegations that "she cannot work due to numerous physical and mental impairments that limit many of her work-related abilities," but contrasted that with Plaintiff's function report in which she "acknowledged no problem with

15

walking, reaching, kneeling, talking, hearing, stair climbing, and following instructions." AR 702 (citing AR 1051). As set forth above, Plaintiff claimed that Dr. Ellis recommended carpal tunnel surgery, yet the record did not support that statement. AR 702-03. Contrary to Plaintiff's allegation that she was "severely depressed," she told an emergency room physician that she was "slightly depressed" because she was not feeling well. AR 705 (citing AR 1087). Plaintiff claimed that she could not concentrate or focus, but she was able to keep a detailed blood pressure diary and "remained focused and provided very detailed testimony for over 30 minutes" during her administrative hearing. AR 705 (citing AR 1091); AR 707. *See* 20 C.F.R. § 416.929(c)(3) (ALJ will consider "observations by our employees"), .929(c)(4) (ALJ will consider whether there are conflicts between a claimant's statements and the rest of the evidence); *see also Wilson*, 602 F.3d at 1146 (ALJ reasonably noted that, although claimant asserted she could not sit for more than 30 minutes, she did not alter her position or appear uncomfortable during 65-minute hearing).

The ALJ also stated that Plaintiff's claims of disabling symptoms "contrast[] sharply" with certain medical records showing full upper and lower extremity strength; full range of motion of the lumbar spine; normal pulses and deep tendon reflexes; normal neurological findings; Plaintiff's reports of no incontinence, numbness, tingling, or weakness; physical examination showing no tenderness; and clinician notes that Plaintiff "is able to ambulate with ease, climb around and twists around in bed without any apparent discomfort." AR 705 (citing AR 1229, 1163-64). The ALJ found that "[s]uch contradictions cast doubt on all of [Plaintiff's] reports and testimony." AR 707. The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms were inconsistent with other evidence.

### 3. Plaintiff's treatment

The ALJ considered Plaintiff's attempts to seek medical treatment for her symptoms and to follow prescribed treatment. *See* AR 702-06; SSR 16-3p, 2017 WL 5180304, at *9 ("We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities[.]"). As explained in Social Security Ruling 16-3p, "if the frequency or extent of the treatment sought by an individual is not comparable to the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9. Here, the ALJ found that Plaintiff's noncompliance with treatment "weaken[ed] the credibility of [her] allegations." AR 709. The Court finds that substantial evidence supports the ALJ's finding.

The ALJ discussed that Plaintiff cancelled appointments despite alleging disabling mental limitations, and stopped going to counseling despite showing improvement with treatment. AR 702, 705, 706. Plaintiff also reported noncompliance with medication despite showing improvement with medication. AR 702, 705, 706. An ALJ will not find that a claimant's symptoms are inconsistent with treatment efforts without considering possible reasons for noncompliance and, as required, the ALJ considered Plaintiff's stated reasons for not complying with her treatment. *See* SSR 16-3p, 2017 WL 5180304, at *9. Specifically, the ALJ noted that Plaintiff testified that counseling did not help and the "'hoops . . . at a state run mental health facility is (sic) difficult to cooperate with.'" AR 702, 704. The ALJ further noted Plaintiff's testimony that her medications caused side effects and acknowledged "some hazards associated with [Plaintiff's] medication. AR 702, 706. The ALJ also discussed that Plaintiff took a half-dose

17

of one of her medications to "lengthen the prescription coverage." AR 705. Contrary to Plaintiff's allegation, the ALJ properly considered Plaintiff's reported reasons for noncompliance. *Cf.* Pl.'s Br. at 9.[9]

### 4. Other factors

Finally, the ALJ considered other evidence in the record, including Plaintiff's work record as well as statements from third parties. AR 706, 709. *See* SSR 16-3p, 2017 WL 5180304, at *6 (ALJ will consider other evidence in the record); 20 C.F.R. § 416.929(c)(3) (ALJ will consider evidence of prior work record); *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (ALJ reasonably considered evidence that claimant quit working several years before the alleged onset date of her disability); SSR 16-3p, 2017 WL 5180304, at *7 (ALJ will consider statements from non-medical sources such as family and friends). And the ALJ found that Plaintiff was able to do a number of activities of daily living. AR 702. *See* SR 16-3p, 2017 WL 5180304, at *7 (ALJ will consider daily activities); 20 C.F.R. § 416.929(c)(3)(i) (same).

Plaintiff presents a myriad of additional claims attempting to support her argument that the ALJ failed to perform a proper credibility determination. None of these alleged errors, however, undermine the substantial evidence supporting the ALJ's credibility determination.[10] *See Biestek*

---

[9] Plaintiff relies on *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), to argue that if noncompliance were an issue, then the ALJ was required to demonstrate that she would have been able to work had she been compliant with her treatment and medication. Pl.'s Br. at 9. Plaintiff's reliance on *Frey* is misplaced. That opinion "concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ did not purport to deny Plaintiff benefits on the grounds that she had failed to follow prescribed treatment; rather, she properly considered Plaintiff's noncompliance with treatment and medication to assess the consistency between Plaintiff's subjective symptoms and the overall evidence of record. *See id.*; SSR 16-3p, 2017 WL 5180304, at *9.

[10] For instance, Plaintiff argues that the ALJ failed to consider that she "has good days and bad days," ignored evidence that Plaintiff was talkative, and "paid lip service to [her] complaints of sleep disturbance." Pl.'s Br. at 9-10. But the ALJ found that, overall, Plaintiff "does experience

18

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)). The ALJ considered the objective medical evidence, Plaintiff's statements regarding her symptoms, information from medical sources, and other relevant evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *4 (providing the framework for an ALJ to consider a claimant's symptoms, including pain, and determine the extent to which the symptoms are consistent with the evidence in the record). The ALJ thoroughly reviewed the evidence and fully substantiated his decision that Plaintiff's subjective complaints were inconsistent with the record, and the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks and citation omitted). The Court finds no reversible error in the ALJ's consideration of Plaintiff's subjective complaints of symptoms.

## VI. Conclusion

For the reasons set forth, the Commissioner's decision is AFFIRMED.

ENTERED this 30th day of August, 2019.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

---

some pain, discomfort, and psychologically based limitations; however, the [ALJ] is not persuaded that her pain, discomfort, and psychological limitations are at the disabling level of severity, duration, and intensity as [Plaintiff] alleges." AR 706.